CHARLES WEINBERGER, *Appellant*, v. THE BOARD OF PUBLIC INSTRUCTION OF ST. JOHNS COUNTY, *et al., Appellees.*

En Banc.

Opinion Filed March 10, 1927.

1. Where the Constitution provides the manner of doing a thing, the manner so prescribed is exclusive, thereby forbidding its being done in a substantially different manner.

2. When the Constitution prescribes the manner of doing an act, it is beyond the power of the Legislature to enact a statute that would defeat the purpose of such constitutional provision.

3. Where a Board of Public Instruction undertakes to issue Special Tax School District bonds upon authority of Sec.

579, *et seq.*, Revised General Statutes, 1920, but in its resolution providing for the issuance of the bonds fixes the maturities for the bonds contrary to an express and continuing limitation of the Constitution, such resolution is a nullity and the proposed bonds void *ab initio*.

4. Any matter or thing affecting the power or authority of the several political subdivisions mentioned in Sec. 3296, Revised General Statutes, 1920, to issue bonds, or the regularity or legality of their issue, including questions of both law and fact, in so far as those matters or things could be lawfully prescribed, regulated, limited or dispensed with by the Legislature in the first instance, or subsequently cured by a validating act, may be put in repose by a decree rendered pursuant to Sec. 3296, *et seq.*, Revised General Statutes, 1920. So also may constitutional rights or privileges which are designed *solely* for the protection of property rights of the individual concerned and which he may waive, or with reference to which he may estop himself, or as to which the Legislature may lawfully limit the period of time within which such right or privilege may be exercised.

5. When a Board of Public Instruction attempts by resolution to fix the maturities of Special Tax School District bonds contrary to an express and continuing requirement of the Constitution, such bonds are void *ab initio* and a taxpayer who is otherwise entitled so to do, but who did not intervene and object to such bonds in a statutory validation proceeding in which a decree purporting to validate such bonds was entered is not thereby barred from subsequently asserting against the issuance of such bonds, the mandatory and continuing command of the Constitution prohibiting the issuance of such bonds with maturities as prescribed in the resolution, even though such taxpayer, at his election, might have intervened and raised the point in the statutory validation proceeding.

An Appeal from the Circuit Court of St. Johns County; DeWitt T. Gray, Circuit Judge.

*Curtis C. Coxe,* of St. Augustine, for Appellant;

*Bassett & Hunter,* of St. Augustine, for Appellees.

STRUM, J.—Appellant, a citizen and resident of St. Johns County and the owner of taxable property in the school district hereinafter mentioned, as complainant below, brought his bill of complaint against appellees, as defendants below, whereby he sought to enjoin the issue and sale of certain special tax school district bonds for District Number One of St. Johns County.

The Board of Public Instruction of said County proposes to issue the bonds in question upon authority of Section 579, *et seq.,* Rev. Gen. Stats. 1920, as amended, and pursuant to a resolution of the said Board passed April 30, 1926.

Appellant asserts that said resoultion attempts to fix the maturities of said bonds contrary to and in violation of Sec. 17 of Art. 12 of the Constitution of Florida, and is therefore void *ab initio* and inoperative.

Appellees, defendants below, interposed a plea to the bill of complaint, setting up a previous decree of the Circuit Court of St. Johns County validating and confirming, in all respects, the bonds in question and decreeing said bonds to be the duly authorized and legally binding obligation of the said Special Tax School District. The procedure resulting in said decree of validation was that authorized and prescribed by Sections 598, and 3296, *et seq.,* Rev Gen. Stats 1920. The decree of validation was entered on July 30, 1926. This suit was instituted on September 9, 1926. Appellant did not intervene in the validation proceedings so as to make himself an actual party thereto, though he might have done so at his election. Nor did the pleadings in the validation proceeding specifically present the Constitutional question involved in this suit.

Upon argument, the Circuit Judge sustained said plea,

denied a temporary injunction, and dismissed the bill of complaint; whereupon complainant appealed.

Sec. 17 of Art. 12, Constitution of Florida, as amended in 1924, controls the issuance of bonds of the character under consideration. That section, after declaring that the Legislature may provide for Special Tax School Districts to issue bonds for the exclusive use of public free schools within any such Special Tax School District, under the circumstances therein stated, further provides, amongst other things:

"  *  *  *  Any bonds issued hereunder shall become payable within thirty years from the date of issuance in annual installments which shall commence not more than three years from date of issue. Each annual installment shall be not less than three per cent. of the total amount of the issue.  *  *  *  "

According to the resolution of the Board of Public Instruction, pursuant to which it is proposed to issue the questioned bonds, the bonds are to be dated June 1, 1926, are in the aggregate principal sum of $250,000.00, and the maturities are as follows:

| Bonds Numbered | | Amount | Due |
|---|---|---|---|
| 1 to 35 inclusive | ............... | $35,000.00 | 1929 |
| 36 to 70 " | ............... | 35,000.00 | 1932 |
| 71 to 105 " | ............... | 35,000 00 | 1935 |
| 106 to 140 " | ............... | 35,000.00 | 1940 |
| 141 to 175 " | ............... | 35,000.00 | 1945 |
| 176 to 210 " | ............... | 35,000 00 | 1950 |
| 211 to 250 " | ............... | 40,000.00 | 1955 |

Obviously, the dates of maturity of the several bonds do not conform to the express command of that portion of Sec. 17, Art. 12 of the Florida Constitution, above quoted, which fact is admitted by appellees in their brief. Appellees urge, however, that this is a question which goes "to

the power of the Board to issue the bonds and was a proper question to be raised in the proceeding to validate the same''; and since appellant was by statute (Sec. 3296, *et seq.*) made ''a party defendant to the proceedings to validate the bonds after the election, and having failed either to intervene in the validating proceedings or to appeal to this (the Supreme) Court from the decree of validation, he (the appellant) is now barred both by the statute and the opinion of this Court in the case of Thompson v. Town of Frostproof (89 Fla. 92, 103 South. Rep. 118) from raising any question in any court of this State affecting the validity of said bonds.''

To support that contention, appellees rely upon the provisions of Section 3296, Rev. Gen. Stats., 1920, authorizing any designated political subdivision issuing bonds under the laws of this State to determine its authority to incur such bonded debt, ''and the legality of all proceedings had or taken in connection therewith'' in the manner therein prescribed. Appellees also rely upon the further provisions of Sec. 3299, Rev. Gen. Stats., 1920, to the effect that when a decree validating such bonds shall have been rendered, and no appeal taken therefrom within twenty days, or in case such an appeal is taken, then when the decree shall have been affirmed by this Court, such decree: ''* * * Shall be forever conclusive as to the validity of said bonds * * * against the * * * taxing district * * * issuing them, and against any tax papers and citizens thereof; and the validity of said bonds * * * shall never be called in question in any Court in this State.''

Appellees rely upon the following language from Thompson v. Town of Frostproof, 89 Fla. 92, 103 South. Rep. 118:

''Reviewing the law * * * we think there can be no escape from the conclusion that the purpose of a decree

validating and confirming bonds thereunder is to put in repose any question of law or of fact that may be subsequently raised affecting the validity of such bonds. This being our deductions, it is a necessary corrolary that in a bond validating suit any question that goes to the power to issue and the validity and regularity of the issuance of said bonds is proper to be raised."

Appellees also cite and rely upon Steen v. Board of Public Instruction, 80 Fla. 146, 85 South. Rep. 684, and also the following statement in Lewis v. Leon County, — Fla. —, 107 South. Rep. 146:

"* * * it being the purpose of a decree validating and confirming bonds under the law of this State to put in repose all questions of law or fact that may be raised affecting the validity of such bonds."

The language used by this Court in reference to the purpose of existing bond validation statutes in the cases just referred to, although apparently broad, was *used* in reference to matters which the Legislature could originally prescribe, regulate, dispense with or subsequently cure, or which the individual affected could lawfully waive or in respect to which he could estop himself. Such language should be read and understood in connection with the issues presented in those cases, and in the light of the organic limitations upon the power of the Legislature.

In Thompson v. Town of Frostproof, *supra*, the Court had under consideration the *statutory* power of a municipality to issue certain bonds. The language employed in that case was used in respect to that situation. No question of power, as affected by a violation of a mandatory constitutional provision was involved. Steen v. Board of Public Instruction, *supra*, also involved a question of *statutory* powers, no constitutional question being presented. The language hereinabove quoted from Lewis v. Leon County,

*supra,* was therein used recitatively,—not as a decision of the proposition.

Since our validation statute (Sec. 3296, *et seq.,* was adopted largely from the Georgia statute on the same subject, appellees cite several Georgia cases construing the statute in that State. In none of these cases, however, was it decided that a tax payer, otherwise entitled to raise the question, was precluded by a validating decree, rendered pursuant to the statute, from subsequently questioning the validity of bonds issued in violation of a mandatory constitutional provision, and hence void *ab initio.* In Smith v. Mayor, etc. of the City of Dublin, 39 S. E. Rep. 327, referred to in the Florida case of Thompson v. Town of Frostproof, *supra,* the questions involved were, first, the sufficiency of the notice calling an election to determine whether the bonds should be issued. The election is required by the Constitution, but the notice, and the contents thereof, are prescribed by statute only, so that a non-compliance with the statute might render the bonds irregular and voidable, but not void. The second question was the sufficiency of the notice to the Solicitor General of the result of such election, which notice is also prescribed by statute. The following language also used in that case is pertinent here: "Certainly, it was never the intention of the General Assembly that bonds which had not received the assent of the number of voters, as required by the Constitution, could be validated".

The question involved in Woodall v. Town of Adel, 50 S. E. Rep. 102, also involved the legality and sufficiency in law of the notice calling the election, but no question of the violation of a mandatory constitutional provision was presented.

In Lippitt v. City of Albany, 63 S. E. Rep. 33, certain constitutional questions were presented, which concerned

the constitutional validity of the validation statute. The only questions therein raised against the validity of the bonds themselves were matters of mere irregularity, which the Court held should have been raised in the validation proceeding. In that case it was further said: ''Some of the grounds assert unconstitutionality in the Act referred to (the validating statute), on the contention that it seeks to confer power on counties and municipalities to incur debt without the consent of two-thirds of the voters thereof (as required by the Constitution of Georgia), by attempting to confirm and authorize an issue of bonds which may not have been authorized by the necessary two-thirds vote; and that the Acts seeks to rise superior to the Constitution and preclude inquiry into the validity of the bonds on such a constitutional ground: * * * This contention is based on a misconception of the purpose of the Act of 1897. It was not the purpose to validate invalid or irregular bonds''.

Distinctions, similar to those above pointed out, are apparent in the other Georgia cases cited by appellees, as well as in the Oklahoma case of State v. West, 118 Pac. Rep. 146.

Speaking with reference to a statute purporting to authorize the issuance of bonds, but which was in violation of the Constitution, the Supreme Court of Georgia, in James v. City of Blakely, 84 S. E. Rep. 431, said: ''It was argued that the plaintiffs were estopped from instituting this proceeding. * * * Perhaps a person may so act as to estop himself from attacking the validity of a law, but an unconstitutional act can not become valid by age. Unconstitutionality is not like minority, a thing which may be outgrown in a few years. The Constitution is the supreme law. It speaks to be obeyed''.

In his work on Constitutional Limitations, Judge Cooley expressed the same principal as follows: ''Acquiescence

for no length of time can legalize a clear usurpation of powers where the people have plainly expressed their will, and the Constitution has appointed judicial tribunals to enforce it''.

The questions presented in Crow v. Board of Supervisors (La.), 76 South. Rep. 183, also cited by appellees, involved, first, the regularity of a statutory election and the proceedings immediately leading to and predicated thereon, and, second, whether the action of the public authorities in fixing the boundaries of a road district was *ultra vires*. The actions assailed all depend for their validity upon statute. No question of a violation of a mandatory constitutional provision was involved. The language used by the Court in that case should be construed with reference to the issues, and in so far as it may refer to acts done in violation of a mandatory provision of the Constitution, it appears to us to be *dictum*.

Sec. 17 of Art. 12, Constitution of Florida, is a limitation upon the legislative power. That section expressly commands that ''any bonds issued hereunder shall become payable   *   *   *   in annual installments   *   *   *. Each annual installment shall not be less than three per cent of the total amount of the issue   *   *   *''.

That section of the Constitution contemplates the issuance of bonds maturing annually, *i. e.* each year, commencing not more than three years from the date of issue, each of such annual installments to be not less than three per cent of the total amount of the issue.

The principle is well established that where the Constitution expressly provides the manner of doing a thing, it impliedly forbids its being done in a substantially different manner. Even though the Constitution does not in terms prohibit the doing of a thing in another manner, the fact that it has prescribed the manner in which the thing shall be done is itself a prohibition against a different man-

ner of doing it. Holland v. State, 15 Fla. 455, text 523. See also Grantham v. Board of Public Instruction, 77 Fla. 540, 82 South. Rep. 52. Therefore, when the Constitution prescribes the manner of doing an act, the manner prescribed is exclusive, and it is beyond the power of the Legislature to enact a statute that would defeat the purpose of the constitutional provision. State *ex rel.* Murphy v. Barnes, 24 Fla. 29, 3 South. Rep. 433; State *ex rel.* Church v. Yeats, 74 Fla. 509, 77 South. Rep. 262; Leonard v. Franklin, 84 Fla. 402, 93 South. Rep. 688. See also: Cooley's Const. Lim. (7th Ed.), p. 114; Coleman v. Town of Eutah, 47 South. Rep. 703; 5 Texas 418; District Township v. Dubuque, 7 Iowa 262. ''Every word of a State Constitution should be given its intended meaning and effect, and essential provisions of a Constitution are to be regarded as mandatory.'' Crawford v. Gilchrist, 64 Fla. 41, 59 South. Rep. 963; Ann. Cas. 1914-B 916. See also: 12 C. J. 707, 740; 19 Cyc. 23. Unless therefore, the resolution of the Board of Public Instruction follows the mandate of the Constitution in fixing the maturities of the bonds, as well as in all other respects, such resolution is a nullity, and bonds issued pursuant thereto would be void *ab initio.*

The Legislature itself, even by express enactment, could not lawfully authorize the issuance of bonds contrary to the express and mandatory limitations of the Constitution, nor could the Legislature by subsequent Act, nor the Courts by decree, validate bonds which are void *ab initio* because issued in violation of controlling mandatory organic limitations. If the Legislature, by a validating Act, or the Courts by procedure and decree authorized only by legislative enactment, can vitalize bonds issued in violation of constitutional mandate, then such legislative or judicial action would overreach the Constitution, and the organic

provisions, contrary to which such bonds were issued, would be futile. See: Brown v. City of Lakeland, 61 Fla. 508, 54 South. Rep. 716; Munroe v. Reeves, 71 Fla. 612, 71 South. Rep. 922. ''The general and established proposition is that, what the Legislature could have authorized, it can ratify, if it can authorize at the time of ratification.'' Charlotte Harbor & Northern Ry. Co. v. Welles, 260 U. S. 8; 67 Law. Ed. 100, affirming *idem*, 78 Fla. 227, 82 South. Rep. 770. See also: Givens v. County of Hillsborough, 46 Fla. 502, 35 South. Rep. 88. See also: 5 McQuillin Munic. Corp. (1913), Section 2310, and cases cited.

It will hardly be doubted that a statute purporting to authorize the issuance of bonds in a manner plainly violative of an express and mandatory constitutional provision would be void. It was said by this Court in State *ex rel.* Nuveen v. Greer, 102 South. Rep. 739, that: ''Where bonds are issued pursuant to a valid statute, mere irregularities in issuing the bonds may not affect their validity, but when a statute violates the Constitution in authorizing bonds to be issued, the statute being inoperative as authority for their issue, the bonds are void and the Courts may enjoin their issue or payment.'' The principle just stated is, of course, applicable to a resolution of a subordinate body. Since the Legislature is without lawful power to directly authorize, or subsequently validate the issuance of bonds in violation of the Constitution, we are unable to see how that result may be lawfully accomplished by indirection, through the medium of a judicial validation proceeding pursuant to legislative authority.

Appellees urge, however, that we are not now concerned, primarily, with the inherent validity of the proposed bonds, as an initial question,—that matter having been adjudicated by the validation decree in the Circuit Court, from which no appeal was taken,—but that the question now

presented is whether appellant is precluded by the validating decree from attacking the validity of the bonds upon the ground asserted by him, namely, that the maturities of the bonds, as fixed by the resolution purporting to authorize the issuance thereof, are contrary to the mandate of the quoted constitutional provision, thereby rendering the resolution a nullity and the bonds void *ab initio*.

In deciding that question, it must be borne in mind that there is a vital distinction between an entire absence of power under the Constitution to issue the bonds involved, —which no Act of the Legislature may remedy,—and the imperfect or irregular exercise of lawful authority in the issuance of the bonds. Deficiencies of the latter character may be waived, or the complaining tax payer may estop himself with reference thereto. Such deficiencies may be cured by validation proceedings pursuant to Section 3296, *supra*. The Legislature, by a curative statute, may even validate bonds originally issued without authority, provided, the Legislature could have authorized the issuance of the bonds in the first place. See State *ex rel.* Nuveen v. Greer, *supra*. But when bonds are issued in violation of a mandatory provision of the Constitution, as for instance, when in excess of the debt limit fixed by the Constitution (See: Mitchell County v. City National Bank, 39 S. W. Rep. 628, reversed on other grounds, 43 S. W. Rep. 880); or when such bonds have not been authorized by a two-thirds vote of the people, as required by the Constitution (See: Katzenberger v. Aberdeen, 121 U. S. 172; 30 Law. Ed. 911; Sykes v. Columbus, 55 Miss. 115); or, as in the case before us, where the maturities fixed by the issuing body are contrary to the express requirement of the Constitution, such bonds are void *ab initio*, and can not be validated by curative legislation. A validating decree authorized only by legislative enactment is therefore ineffectual to bar an

16—Vol. 93

affected tax payer, otherwise entitled so to do and who did not intervene and raise such objection in the statutory validation proceeding, from subsequently resisting the issuance of the bonds on the ground that one of the essential and indispensable steps in the proceedings by which the bonds are to be issued was had in violation of a mandatory provision of the Constitution, a non-compliance with which the complaining tax payer can not waive. See: Coleman v. Town of Eutah, 47 South. Rep. 703; Coleman v. Broad River Twp., 27 S. W. Rep. 774; Walton v. Adair, 97 N. Y. Supp. 868; aff. 8 N. E. Rep. 1121; 12 C. J. 1094, 1095; 15 C. J. 627; 5 McQuillin Munic. Corp., Section 2310.

Where no question of public policy or morals is involved, an individual may waive, and may perhaps estop himself with reference to, constitutional provisions designed *solely* for the protection of his individual property rights. Cooley's Const. Lim. (7th Ed.) p. 250. See also: Moore v. City of Yonkers, 23 Fed. 485; 9 A. L. R. 590. It is usually competent also, for the Legislature to limit the time within which the individual may exercise rights or privileges arising under constitutional provisions of the character last stated. See Cooley's Const. Lim. (7th Ed.) 815. Although the constitutional provision now under consideration may be designed in part to protect the individual property rights of the tax payer, it is primarily an express and continuing limitation upon the power to issue the bonds. Such a constitutional provision is a continuing command. It may be satisfied only by strict compliance. It is not subject to or susceptible of legislative regulation or restriction upon the time within which a failure to observe the same may be asserted. Bonds issued in violation thereof are void *ab initio*.

At the time of the passage of the resolution of April 30, 1926, the Board of Public Instruction of St. Johns County

was, and still is, utterly without power to issue bonds of
the character under consideration with maturities as speci-
fied in said resolution, and it is beyond the present power
of the Legislature either to confer that power or to ratify
the action of the Board.  As we have seen, the issuing reso-
lution is consequently,—not merely irregular or voidable,—
but as authority for the issuance of such bonds it is a
nullity and void *ab initio*.  In contemplation of law, it does
not exist, and such action of the Board,·as well as all things
predicated thereon, are of. no more effect than if such ac-
tion had never been taken.  See Wilson v. Alleghany City,
79 Pac. Rep. 272; Bennet v. Emmetsburg, 115 N. W. Rep.
582; Andre v. Burlington, 117 N. W. Rep. 1082.  The
proceedings of the Board of Public Instruction in passing
the resolution, fixing the maturities of the bonds as therein
prescribed, is analogous to one in which a Court or other
body has acted in a matter in which it has no jurisdiction
over the subject matter.  When any court, board or body
assumes to act under such circumstances, the proceeding
is not merely void or irrgeular, but void *ab initio*, resulting
only in a nullity.

Analogous also, in principle, are those cases in which it
is held, almost universally, that a property owner who has
failed at the time and in the manner prescribed by statute
to object to the validation or ratification of special assess-
ments for local improvements is not estopped to subse-
quently question the validity thereof in cases where such
assessments are not merely voidable or irregular, but are
void *ab initio* because of an inherent jurisdictional defect
in the essential procedure culminating in such assessment.
Upon that question it is held by the Courts, with great
unanimity, that a statute limiting the time within which an
action may be brought to contest the validity, or the ratifi-
cation, of a special assessment made against abutting or

adjacent property to pay the cost of local improvements, does not apply so as to bar a subsequent action by an affected property owner to enjoin the entry or collection of such assessment or to cancel the lien thereof as a cloud on his title, when the essential proceedings upon which the assesssment is based are void. See Marshall v. City of Leavenworth, 24 Pac. Rep. 975, wherein it was said: ''Any assessment made to pay for such improvements would be absolutely null and void, and the parties protesting would not be required, under the aforesaid limitations contained in Sec. 1, Chap. 101, Laws of 1887, to commence any action, within thirty days after the making of the assessment, to set aside the assessments, or to defeat or avoid the same.'' See also: Steinmiller v. Kansas City, 44 Pac. Rep. 600; Grier v. Kramer, 162 Pac. Rep. 490; City of Henderson v. Lieber, 192 S. W. Rep. 830; 9 A. L. R. 620. See also: Morrow v. Barber Asphalt Paving Co., 111 Pac. 198, where it was said:

''For the purpose of requiring promptness in making objections to the validity of assessments for such improvements, the Legislature provided 'no suit to set aside the said assessments, or to enjoin the making of same, shall be brought, or any defense to the validity thereof be allowed after the expiration of thirty days from the time the amount due on each lot or piece of ground liable for such assessment is ascertained.' We do not think this statute can be interposed to aid an assessment which is void on jurisdictional grounds on the face of the proceedings. It should be held to apply only to such defects and irregularities in the proceedings as would render them voidable, but not void. * * * As the proceedings which led up to the assessment were had without jurisdiction, and consequently are without any legal effect upon the property rights of the plaintiffs, the mere failure to act certainly

could not alter the situation of either party.'' See also: Schultz v. Rittenbush, 134 Pac. Rep. 961; Ogden City v. Armstrong, 168 U. S. 224, 42 Law Ed. 444; Elmdorf v. City of San Antonio, 242 S. W. Rep. 185; Milwaukee Elec. Ry. Co. v. Village of Shorewood, 193 N. W. Rep. 94; City of Muscogee v. Nicholson, 171 Pac. Rep. 1102; City of Bartlesville v. Holm, 139 Pac. Rep. 273; 9 A. L. R. 627; Barber Asphalt Paving Co. v. Jurgens, 149 Pac. 560; 9 A. L. R. 597; Glas v. Connata, 121 Ill. App. 215; Bennert v. Emetsburg, 115 N. W. Rep. 582; Gwilliam v. Ogden City, 164 Pac. Rep. 1022; Mills v. Detroit, 54 N. W. Rep. 879; New Whatcom v. Bellingham Bay Imp. Co., 38 Pac. Rep. 1024; Head v. Village of Wood River, 194 Ill. App. 104; Hildreth v. Longmont, 105 Pac. Rep. 107; 9 A. L. R. 738, note. (And see the many other cases cited in 9 A. L. R., pages 590 to 904, inclusive, particularly at pp. 668, 763, 778, 814, 878. See also: Crane v. City of Siloam Springs, 55 S. W. Rep. 955; Randall v. Arkansas City, 217 Pac. Rep. 298; City and County of Denver v. Tihen, 235 Pac. Rep. .777.

It has been held that when bonds are issued in violation of a mandatory provision of the Constitution and are therefore not merely voidable or irregular, but are void for want of power to issue them, no subsequent act or recognition of their validity can so far give viltality to such bonds as to estop a tax payer from denying their legality. Ryan v. Lynch, 68 Ill. 160.

''If a legislative enactment conflicts with an existing provision of the Constitution, it does not become a law.'' State ex rel. Nuveen v. Greer, 88 Fla. 249, 102 South. Rep. 739; 37 A. L. R. 1298. Where a statute purported to authorize a city to issue bonds for a purpose prohibited by the Constitution, and the statute had never been judicially held to be valid, it was held that since there was a total absence of power in the Legislature to pass the statute, the bonds issued

thereunder are void, and consequently neither the payment of interest on the bonds by the city nor the acts of its officers or agents in dealing with the property purchased by the bonds, would operate, by way of estoppel, ratification, or otherwise, to render the city liable on such bonds, and, further, that no protection could be afforded a purchaser of such bonds even by a consent judgment in an action based on the bonds. See Parkersburg v. Brown, 106 U. S. 487; 27 Law. Ed. 238. See also: Com. Bank v. Iola, 154 U. S. 617; 22 Law. Ed. 463. See also the cases cited in 37 A. L. R. 1312, and see State ex rel. Nuveen v. Greer, supra. Nor could bonds so issued be lawfully validated by subsequent legislative act. Of course, where bonds are sold to a bona fide purchaser while the statute authorizing the issue thereof is duly adjudged by a competent Court to be valid, such bonds are valid obligations, and, by the force of the Constitution itself, a purchaser is protected from a subsequent decision holding the statute invalid. See State ex rel. Nuveen v. Greer, supra.

As was said in C. B. U. P. R. R. Co. v. Smith, 23 Kan. 745, speaking with reference to the right of a bona fide purchaser of void bonds: "It seems to us therefore that the law was in its inception unconstitutional, and that no acts done under it are of any validity or create any estoppel. Every holder of the bonds is chargeable with notice of the law, and all matters affecting its constitutionality." See also: Sutliff v. Lake County Comm'rs., 147 U. S. 230; 37 Law Ed. 145.

For the reasons already stated, the resolution of April 30, 1926, purporting to authorize the issuance of the bonds in question was in direct violation of a mandatory provision of the Constitution which is not suscepible of waiver. Such resolution was therefore a nullity. From a nullity no rights can arise, and by it no rights are affected, nor

can a waiver or estoppel be predicated upon it. The resolution being void,—and not merely irregular or erroneous and therefore only voidable,—the complainant was entitled to ignore it. For the reasons stated, it was and is beyond the power of the Board of Public Instruction to issue bonds of the character under consideration, with maturities as specified in the Resolution of April 30, 1926. Any attempt to do so is void *ab initio* and remains void. The designated defect in the bonds under consideration, which is in the nature of a jurisdictional defect, is not waived by an affected tax payer by his failure to object to the attempted validation of the bonds or by his failure to appeal from the order of validation. Under the circumstances hereinabove stated, equity may grant relief by injunction against the issuance of such bonds, notwithstanding the failure of the complaining and affected tax payer to object in the validation proceeding.

The validation proceeding on which appellees rely is a creature of the Legislature. The provisions of Sec. 3299, *supra,* and other applicable statutes, necessarily have reference to matters and rights which the Legislature could lawfully prescribe, limit, regulate or dispense with in the first instance, and to matters which that body could lawfully cure by a subsequent validating act; that is, to requirements, a non-compliance with which would render the bonds irregular or voidable, but not void *ab initio*. See Middleton v. St. Augustine, 42 Fla. 287, 29 So. 421; 89 Am. St. Rep. 227; Givens v. Hillsborough County, 46 Fla. 502, 35 So. 88.

Any matter or thing affecting the power or authority of the several political sub-divisions mentioned in Sec. 3296, Rev. Gen. Stats. 1920, to issue bonds, or the regularity or legality of their issue, including questions of both law and fact, in so far as those matters or things could be lawfully prescribed, regulated, limited or dispensed with

by the Legislature in the first instance, or subsequently cured by validating Acts, may be put in repose by a decree rendered pursuant to Sec. 3296, *et seq.*, Rev. Gen. Stats. 1920.  So also may constitutional rights or privileges which are designed *solely* for the protection of the property rights of the individual concerned and which he may waive, or with reference to which he may estop himself, or as to which the Legislature may lawfully limit the period of time within which they may be exercised.  Such an adjudication of the several matters just referred to is forever conclusive upon the persons and political sub-divisions mentioned in Sec. 3296, *et seq.*, and all such persons and bodies are thereafter forever barred from again raising those questions with respect to the bonds as to which the adjudication was made.  In other words, any defect or irregularity which may be waived or to which an estoppel may apply, and which does not render the proceeding a nullity and therefore void *ab initio* and incapable of subsequent legislative ratification or validation, may be adjudicated in the validation proceeding under the statute, and if such defects or irregularities are not raised in that proceeding they are forever and conclusively settled with respect to the bonds therein involved.  But if, as is the case here, the resolution upon which the proposed bonds are based is a nullity because it purports to prescribe maturities for the bonds under consideration contrary to the express command of the Constitution, the bonds to be issued pursuant thereto are not merely irregular or voidable (and therefore susceptible of ratification or validation), but such bonds are void *ab initio* and are therefore incapable of legislative validation.  An affected tax payer, who is otherwise entitled so to do, but who did not intervene and object to such bonds in a statutory validation proceeding, is not thereby barred from subsequently asserting against the issuance of such bonds the mandatory and continuing command of

the Constitution prohibiting the issuance thereof. For the reasons stated, the decree rendered in the statutory validation proceeding, purporting to validate such void bonds, is no defense to a subsequent suit in equity seeking to enjoin the issuance thereof on the ground that the bonds are about to be issued in violation of constitutional mandate, even though the complainant tax payer might have intervened as an actual party and raised the objection in the statutory validation proceeding but did not do so.

The decree appealed from is reversed, and the cause is remanded for further proceedings consistent with this opinion.

ELLIS, C. J., AND WHITFIELD, TERRELL, BROWN AND BUFORD, J. J., concur.

WHITFIELD, J., concurring.

Specific provisions of the State Constitution definitely regulate the issue of bonds by Special Tax School Districts. Sec. 17 Art. 12, Constitution, as amended in 1924, page 484, Acts of 1923. In statutory judicial proceedings in which the organic provisions were not considered, bonds were validated to be issued by a Special Tax School District. The statute provides that the decree validating the bonds "shall be forever conclusive as to the validity of said bonds against the taxing district and against all taxpayers and citizens thereof; and the validity of said bonds shall never be called in question in any Court of this State" (Sec. 3299, Rev. Gen. Stats.); and the decree dated July 20, 1926, adjudicated that the bonds are "validated and confirmed in all respects and that said bonds are the duly authorized and legally binding obligation of" the special tax school district. The question whether the bonds as proposed to be issued, violate the definitely ap-

plicable mandatory provisions of the Constitution, was not presented, considered or decided in the validation proceedings.

This appeal is from a decree dismissing a bill brought September 9, 1926, to enjoin the issuance and sale of the validated bonds on the ground that the bonds violate not a statute but the provisions of the Constitution under which alone they can legally be issued. Section 17, Art. 12 of the Constitution, as amended in 1924, specifically provides that "any bonds issued hereunder shall become payable within thirty years from the date of issuance in annual installments which shall commence not more than three years after the date of issue. Each annual installment shall be not less than three per cent of the total amount of the issue." The bonds as proposed to be issued plainly violate the above organic commands in that they are not made payable in annual installments, but are specifically made payable in periods of three and five years.

Section 580, Revised General Statutes, 1920, provides that "the Board of Public Instruction shall determine by resolution to be entered in its records" * * * "the time when the principal and interest of such bonds shall be due and when payable;" but this provision is superseded and modified by the above quoted organic amendment so as to require the board to determine by resolution to be entered in its records, that the bonds shall become payable in annual installments commencing not more than three years after the date of issue, each annual installment to be not less than three per cent of the total issue.

The organic provisions are effective and controlling, and modify or supersede any conflicting statutory provisions in the premises contained in Section 580 or other sections of the Revised General Statutes of 1920. Perry v. Consolidated Special Tax School Dist. No. 4, Hillsborough County,

89 Fla. 271, 103 South. Rep. 639. Where a regulation is prescribed by the Constitution, it is in effect a prohibition against a conflicting statutory regulation. State *ex rel.* Murphy v. Barnes, 24 Fla. 29, 3 South. Rep. 433; State *ex rel.* Church v. Yeates, 74 Fla. 509, 77 South. Rep. 262; Leonard v. Franklin, 84 Fla. 402, 93 South. Rep. 688; State *ex rel.* Bours v. L'Engle, 40 Fla. 392, 24 South. Rep. 539; Brown v. City of Lakeland, 61 Fla. 508, 54 South. Rep. 716; Munroe v. Reeves, 71 Fla. 612, 71 South. Rep. 922.

Bonds to be paid by taxation, can be issued only as authorized by law, and when the issue of such bonds is regulated by specific provisions of the Constitution, such provisions cannot be waived; and bonds issued in violation of the organic commands can have no authorized existence and are necessarily void if the Constitution controls.

Where the Constitution contains provisions regulating the issue of bonds by governmental subdivision or agencies of the State, such provisions are the controlling law. Bonds issued in violation of such organic provisions are unauthorized and void and cannot be authorized or rendered valid by legislative enactment; and the same rule applies to judicial validations of bond issues when the organic provisions are not duly adjudicated. But where the validation is by competent judicial procedure and the particular organic provisions were duly adjudicated to have been not violated by the particular bond issue, such bonds if sold and *delivered* to innocent parties for fair value upon the faith of the adjudication of validity, and are otherwise valid, may be protected as property by the Constitution (State *ex rel.* Nuveen v. Greer, 88 Fla. 249, 102 South. Rep. 739, 37 A. L. R. 1298; Pennington v. Van, — S. D. —, 204 N. W. Rep. 17, text 19), though the adjudication, if found to be errnoeous, may not be binding as a precedent in future adjudications on the same organic provisions. The previous

decision may be overruled, but that would not affect the rights duly acquired while the prior decision was effective. Christopher v. Mungen, 61 Fla. 513, 55 South. Rep. 273; State *ex rel.* Nuveen v. Greer, 88 Fla. 249, 102 South. 739, 37 A. L. R. 1298.

Statutes validating governmental bond issues may cure statutory or administrative procedural defects (Givens v. Hillsborough County, 46 Fla. 502, 35 South. Rep. 88; Rogers v. City of Keokuk, 154 U. S. 546, 14 Sup. Ct. Rep. 1162; Grenada County Sup'rs v. Brogden, 112 U. S. 261, 5 Ct. Rep. 125; 15 C. J. 627; Charlotte Harbor & N. R. Co. v. Welles, 260 U. S. 8, 43 Sup. Ct. Rep. 3); and statutory judicial proceedings validating bond issues may, if so provided by statute or valid rule of procedure, operate to estop the same parties from further litigation as to all matters, organic or otherwise, that were duly adjudicated in the validating proceedings, as well as all statutory or other non-organic procedural defects and irregularities that reasonably should have been litigated in the validation proceedings. Thompson v. Frostproof, 89 Fla. 92, 103 South. Rep. 118; Lyle v. State *ex rel.* Caldwell, 69 Fla. 97, 67 South. Rep. 574. See also Peacock v. Feaster, 52 Fla. 565, 42 South. Rep. 889; 34 C. J. 818; Floersheim v. Board of Com'rs of Harding County, 28 New Mexico 330, 212 Pac. Rep. 451; 131 Ga. 629; 168 Pac. 609; Bartlesville v. Holm, 40 Okla. 467, 139 Pac. Rep. 273, 9 A. L. R. 627, 94 U. S. 351; 168 U. S. 1; 34 C. J. 1874. But such validating statutes cannot make valid, bonds that are void because issued in violation of the specific commands or requirements of the Constitution; and any provision of a statute to the effect that bonds which have been judicially validated shall be conclusively valid and not subject to judicial controversy, cannot preclude or estop proper parties from invoking appropriate judicial inquiries as to whether the bonds

violate definitely applicable provisions of the controlling organic law, when the constitutional question has not been adjudicated. Likewise the validity of bonds as against definite organic requirements is not conclusively established by judicial adjudications when the organic provisions alleged to have been violated were not considered and duly adjudicated in the judicial proceedings. Otherwise the Constitution would not be the dominant law, and by indirection the controlling organic law would be rendered impotent and circumvented by legislative or judicial action, when both the legislative and the judicial power are subject to the Constitution as the supreme law that must be made effective, notwithstanding any enactment or adjudication to the contrary. See Quaker City Nat. Bank v. Nolan County, 59 Fed. Rep. 660; 37 A. L. R. 1310 Notes; 9. A. L. R. 634 Notes. Even if one taxpayer be estopped because of being an actual party to an adjudiction, other taxpayers may not be estopped when a constitutional command is violated in issuing bonds to be paid by taxation.

In this case the taxpayer did not intervene as he could have done under the statute, therefore he was not an actual party to the validation proceedings; and the constitutional question here presented was not in any way an issue in the validation proceedings.

Even if the tax-payer, who at most was only constructively a party to the validation proceedings, is bound by the validation decree as to all non-organic questions that were presented or that should have been presented for adjudication in the validation decree, such taxpayer is not estopped to invoke appropriate judicial inquiry as to organic questions that affect the validity of the bonds and that were not presented in the validation proceedings; and even if one taxpayer becomes an actual party to such validating proceedings and is estopped by the adjudication of an

organic question, other taxpayers not actual parties may not be estopped by the adjudication, when the bonds have not been sold and delivered, and the bonds in fact violate specific commands of the Constitution, there being no other provisions of law or of procedure for testing the constitutionality of the bonds. Otherwise the organic commands would be futile, and statutes or rules of procedure would operate to sanction a violation of organic law when such statutes and rules should be construed and applied to enforce the Constitution as the paramount law. No question of rights of innocent holders for value is involved, where the bonds have not been sold and delivered. And bonds that have been sold are subject to organic defects that have not been adjudicated. State *ex rel.* Nuveen v. Greer, 88 Fla. 249, 102 South. Rep. 739, 37 A. L. R. 1298.

What is said in an opinion upon a point not raised or properly involved cannot control in a subsequent case where the very point is presented for decision. Union Tank Line Co. v. Wright, 249 U. S. 275, 39 Sup. Ct. Rep. 276. General words used in a judicial opinion should be construed with such limitations as are required by a reference to the facts in the case. Smitz v. Wright, 64 Fla. 485, text 486, 60 South. Rep. 225; concurring opinion *ex parte* Ernest Amos, 112 So. 289, filed January 11, 1927; 177 N. Y. 106; 101 Am. St. Rep. 722; 15 Fla. (2nd) 412.

In Thompson v. Frostproof, 89 Fla. 92, 103 South. Rep. 118, the *Constitution* did not specifically regulate the issuing of the municipal bonds that were in that case authorized by *statute* for municipal purposes; and the statement in the opinion "that the purpose of a decree validating bonds is to put in repose any question of law or fact that may be raised affecting the validity of such bonds," must be interpreted in the light of the issues and facts presented (German Alliance Ins. Co. v. Home Water Supply Co., 226 U. S.

220, 33 Supt. Ct. Rep. 32), and as including only such mat-
ters as may be cured by statutory validation or that may
be foreclosed by adjudication in such a proceeding, and as
not including matters controlled by specific organic pro-
visions that cannot be affected by statute, that cannot be
waived and that cannot be foreclosed by judicial action
when not embraced in the issues adjudicated. This rule of
interpretation is particularly applicable to statutory bond
validating proceedings in which the only necessary parties
are the governmental subdivision or agency that proposes to
issue bonds and the State through the State Attorney. Any
other interpretation in such a case would operate to deprive
persons of organic property right without due process of
law and in violation of the commands and requirements of
the Constitution. There can be no statutory or judicial
estoppel to challenge the validity or governmental bonds
that are void because they violate specific provisions of the
Constitution when the matter has not been adjudicated and
cannot be waived. The courts are not authorized to hold
that though the bonds are not issued as the Constitution re-
quires, yet as the Constitution controls, the bonds should
be made effective according to controlling organic law and
not according to their own terms. The Constitution does
not operate to change the terms of bonds issued in violation
of the Constitution, so as to make constructively valid, pro-
visions in the bonds that are in law and in fact invalid; but
the Constitution does operate to render invalid, bonds that
are issued in violation of the commands or requirements of
the organic law. The authority to issue the particular
bonds in this case is conferred and regulated by the Consti-
tution, and as the bonds are not issued according to the re-
quirements of the Constitution, there is no authority to
issue, and bonds issued without authority are void. To exer-
cise delegated authority in violation of its terms is to exer-

cise authority not conferred. See Barnum v. Okolona, 148 U. S. 393, 13 Sup. Ct. Rep. 638; Norton v. Dyersburg, 127 U. S. 160, 8 Sup. Ct. Rep. 1111; Dixon County v. Field, 111 U. S. 83, 4 Sup. Ct. Rep. 315; Lake County v. Graham, 130 U. S. 674, 9 Sup. Ct. Rep. 654; L. R. A. 1915A 947, Note.

Corporate ratification cannot supply a want of statutory power. Lewis v. City of Shreveport, 108 U. S. 282, 2 Sup. Ct. Rep. 634. Statutory validation cannot cure a violation of constitutional provisions in issuing bonds. Quaker City Nat. Bank v. Nolan County, 59 Fed. Rep. 660; Quaker City Nat. Bank v. Nolan County, 66 Fed. Rep. 883; Quaker City Nat. Bank v. Nolan County, 14 C. C. A. 157; Cheney v. Jones, 14 Fla. 587, text 614; State ex rel. Nuveen v. Greer, 88 Fla. 249, text 271, 102 South. Rep. 739, text 747, 37 A. L. R. 1298, text 1310. See also Katzenberger v. Aberdeen, 121 U. S. 172, 7 Sup. Ct. Rep. 947; Citizens' Savings & L. Ass'n of Cleveland v. Topeka, 20 Wall. (U. S.) 655; Mc-Pherson v. Foster, 43 Iowa 48; 15 C. J. 626.

Where bonds are issued in violation of the Constitution there is no estoppel to assert the invalidity of the bonds. City of Parkersburg v. Brown, 106 U. S. 487, 1 Sup. Ct. Rep. 442; 15 C. J. 626; 37 A. L. R. 1310 Notes. The bonds in this case have not been sold and delivered. No rights of innocent holders for value are involved.

The Constitution provides that "all courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy by due course of law." Sec. 4, Declaration of Rights; Getzen v. Sumter County, 89 Fla. 45, 103 South. Rep. 104.

Remedy by due course of law contemplates an observance of organic rights.

The citizen taxpayers within a Special Tax School District have a direct constitutional right and interest in the

issue of bonds by the district to be paid by taxation, which right and interest cannot be curtailed or impaired by legislative or judicial regulations; and it is the right and privilege if not also the duty of such citizen tax-payers to maintain suits to enforce the mandates and requirements of the Constitution that specifically regulate the issue of bonds by the district. If any statutory provision or judicial rule or action in effect deprives a taxpayer of his rights in the premises, so as to violate the organic provisions, such encroaching statutory or judicial action is by the superior force of the Constitution rendered inoperative; and it is the duty of the Courts by appropriate procedure and due course of law to effectuate the paramount organic law.

The statutes provide special proceedings for validating bonds in which the governmental subdivision or agency and the State by the State Attorney are the only necessary parties, citizens and taxpayers being given notice by publication and a right to intervene; and Section 3299, Revised General Statutes, purports to estop the subdivision and all taxpayers and citizens thereof from thereafter challenging in the courts the validity of bonds that are validated by decree, and makes no provision for litigating the rights of taxpayers by anyone else. The *statute* literally interpreted purports to foreclose organic rights of resident citizens by mere publication without personal service, and to preclude the assertion of organic rights that cannot be waived and that have not been adjudicated. If the statute is interpreted as controlled by the Constitution it may be made effective, and this should be done if it reasonably can be. Davis v. Florida Power Co., 64 Fla. 246, 60 South. Rep. 759; Langford v. Odom, 77 Fla. 282, 81 South. Rep. 469; *In re* Seven Barrels of Wine, 79 Fla. 1, 83 South. Rep. 627; Linder v. United States, 288 U. S. 5, 45 Sup. Ct. Rep. 446; Dahnke-Walter Milling Co. v. Bondurant, 257 U. S.

262, 42 Sup. Ct. Rep. 106; Burr v. Florida East Coast R. Co., 77 Fla. 259, 81 South. Rep. 464; State *ex rel.* Young v. Duval County, 76 Fla. 180, 79 South. Rep. 692; Florida East Coast R. Co. v. State, 79 Fla. 66, 83 South. Rep. 708; Missouri Pac. R. Co. v. Boone, 270 U. S. 466, 46 Sup. Ct. Rep. 341.

The Circuit Courts of this State have original jurisdiction in "cases in equity," and "cases at law," "and of such other matters as the Legislature may provide." Section 11, Article V. Jurisdiction of "cases" has reference to controversies "presented in such form, with adverse litigants, that the judicial power is capable of acting upon them, and pronouncing and carrying into effect a judgment between the parties, and does not extend to the determination of abstract questions or issues framed for the purpose of invoking the advice of the Court without real parties or a real case." Liberty Warehouse Co. v. Grannis, — U. S. —, 47 Sup. Ct. Rep. 282, decided January 3rd, 1927. See also Postum Cereal Co. v. California Fig Nut Co., — U. S. —, 47 Sup. Ct. Rep. 284, decided January 3rd, 1927; Keller v. Potomac Electric Power Co., 261 U. S.. 428, 43 Sup. Ct. Rep. 445; Muskrat v. United States, 219 U. S. 346, 31 Sup. Ct. Rep. 250. See also Fidelity N. B. v. Swoke, U. S. Sup. Ct. April 11, 1927.

If in authorizing the Legislature to confer upon the Circuit Courts jurisdiction of "other matters," the Constitution contemplates functions or controversies other than judicial "cases," it does not contemplate that judicial "cases" shall be litigated and adjudicated or effectuated contrary to controlling provisions and principles of fundamental law.

Whatever may be the "other matters" of jurisdiction which the Legislature may confer upon the Circuit Courts (see State *ex rel.* Young v. Duval County, 76 Fla. 180, 79

South. Rep. 692; Pugh v. Bowden, 54 Fla. 302, 45 South. Rep. 499; Phillips v. Town of Altamonte Springs, Fla., 110 So. 460; 56 Fla. 243,) and whatever·may be the governing rules of procedure and adjudication, other than the requirement of due process of law, in exercising jurisdiction in such "other matters," "cases in equity" and "cases at law" within the meaning of the Constitution are those wherein adversary parties present justiciable issues for judicial adjudication according to controlling provisions and principles of fundamental law. Adjudications in "cases in equity" and in "cases at law" have legal attributes of finality and enforceability resulting from an exercise of the judicial power of the State that may not be incident to determinations in proceedings that are special in their nature and that are not according to the essential requirements of a judicially litigated and adjudicated "case," with adversary parties and justiciable issues.

In this case the validating proceedings showed that the bonds were to be issued in violation of the specific mandate of the Constitution as to when they shall be payable, and the State Attorney, for the State, the only defendant, merely referred to the administrative steps taken and stated that he knew of "no reason why the said bonds should not be validated and confirmed as prayed." This does not appear to be a compliance with the statute (Sec. 3297, Rev. Gen. Stats. 1920), so that the stated validating proceedings not being in accord with the statute in not raising the constitutional question, are not such as to make the estoppel of Section 3299 applicable when the bonds violate the Constitution.

The bonds recite that 250 of them are issued and that they are issued "by virture of and in strict compliance with the Constitution and the laws of Florida." But the statute requires a record to be made of the time when the bonds are to be made payable (Sec. 580, Revised General

Statutes, 1920, as modified by the Constitutional Amendment to Section 9, Art. XI); and the required statutory record and the validating proceedings show the bonds are made payable in violation of the specific terms of the Constitution, and all parties are bound by the public records upon which the bonds purport to be issued notwithstanding recitals contained in the bonds. Dixon County v. Field, 111 U. S. 83, 4 Sup. Ct. Rep. 315; Lake County v. Graham, 130 U. S. 674, 9 Sup. Ct. Rep. 654; Sutliff v. Lake County Com'rs, 147 U. S. 230, 13 Sup. Ct. Rep. 318; 15 C. J. 626. In Gunnison Co. v. Rollins, 173 U. S. 255, the recitals were specific and the rights of *bona fide* holders for value were involved.

A taxpayer and those whom he represents may, pursuant to reasonable statutory or judicial rules, be bound or estopped by an adjudication as to matters organic or otherwise included in the adjudication, 59 Pac. 976; 91 Pac. 699, or as to such matters, not controlled by organic law, as reasonably should have been litigated in the suit, and in some instances as to matters of organic as well as statutory right that affect private individual rights and can be waived by individuals; but taxpayers are not subject to statutory or judicial estoppel as to matters not put in issue and adjudicated, that involve the constitutional validity of bonds of a governmental subdivision or agency of the State, when the issue of such bonds is definitely regulated by the Constitution, though the bonds have been validated in statutory judicial proceedings to which the taxpayers were not parties and in which statutory validating proceedings the constitutional question was not presented, considered or decided. Such matters involve public and *quasi* soverign rights and obligations, and being controlled by specific organic provisions, such rights cannot be waived by individuals, and are not subject to impinging statutory provisions or judicial requirements. Other-

wise the Constitution would be less than supreme and its mandates and requirements could be impaired or nullified by statutory or judicial action or rules.

The Constitution does not contemplate that rights conferred by the organic law may be directly or indirectly impaired or nullified by statutes or judicial procedure. The Constitution confers upon the freeholder electors of a Special Tax School District the right to vote for or against bonds to be issued by the district, and the Constitution specifically provides when the bonds shall be payable and how they shall be paid by tax levies. The taxpayers have an organic right in the payment of the bonds and may require the bonds to be made payable as the Constitution commands, which right cannot be impaired by statutory limitations upon the organic right to appropriate remedy in the courts by due course of law for injuries to such property rights.

The Legislature cannot directly by statute or indirectly by forbidding judicial inquiry, legalize bonds that are issued in violation of specific provisions of the Constitution; nor can the Legislature by statute estop citizen taxpayers to pursue the organic right to remedy by due course of law in the courts of the State for an injury to their organic property rights, when such right to a remedy has not been duly asserted and adjudicated or waived when it can be waived; nor can such organic right to remedy in the courts be by statute so curtailed as to substantially impair or nullify the right; and where a statute, like Section 3299, Revised General Statutes of 1920, in effect estops all citizens and taxpayers of a district from challenging in the courts the validity of bonds to be issued by the district in violation of particular commands and requirements of the Constitution, when such organic validity has not been adjudicated, and the organic rights involved cannot be waived, such statute should be construed as not

covering unadjudicated constitutional questions or that as to such matters is inoperative, since otherwise the statute would in effect be a denial of rights secured by the Consitution; and under the Constitution it is the duty of the courts in appropriate proceedings duly taken to enforce the paramount law and to effectuate such organic rights, notwithstanding the contrary provisions of the statute.

Before the right of taxpayers to challange the constitutional validity of bonds that are to be paid by taxation can be concluded by judgment, there must have been a fair adversary presentation by proper parties of the organic question, either specifically or by inclusion in other matters, to a court of competent jurisdiction, and a consideration and adjudication of the matter by the Court in due course of law. See Lindsay v. Allen, 112 Tenn. 637, 82 S. W. Rep. 171; People *ex rel.* v. Chicago, B. & Q. R. Co., 247 Ill. 340, 93 N. E. Rep. 422; People *ex rel.* v. Illinois Cent. R. Co., 298 Ill. 516, 131 N. E. Rep. 624; Orcutt v. McGinley, 97 Neb. 762, 151 N. W. Rep. 322; Jackson v. Bullock, 62 Fla. 507, 57 South. Rep. 355; 35 C. J. 805, 912, 932; 168 Pac. 77.

The validation proceedings are not *res adjudicata* or an estoppel as against the taxpayer in this case because:

1. The parties are not the same.

2. The issues are not the same.

3. The facts considered are not the same.

4. The statutory proceedings were not substantially complied with as to the defenses made, therefore the statutory estoppel is not applicable when the bonds violate specific provisions of the Constitution, and that question was not presented by the State Attorney or otherwise.

5. The bonds being void because violative of specific provisions of the Constitution there can be no estoppel to challenge their validity by interested parties who are not estopped by being parties to an adjudication of the question.

6. The organic right to remedy by due course of law cannot be impaired by statutory estoppel when the matter at issue, an organic requirement, has not been adjudicated.

7. The statute is inoperative to indirectly by estoppel validate bonds that are void under the Constitution and that cannot be directly validated by a curative statute.