THE STATE OF FLORIDA EX REL. WILLIAM A. BOURS, JAMES A. MARVIN AND E. C. PICKETT AS THE BOARD OF PUBLIC INSTRUCTION OF DUVAL COUNTY, PLAINTIFFS IN ERROR, VS. FRANCIS F. L'ENGLE, JOSEPH H. DURKEE, E. P. HOLMES, DAVID OGILVIE AND H. J. PICKETT AS THE BOARD OF COUNTY COMMISSIONERS OF DUVAL COUNTY, DEFENDANTS IN ERROR.

1. Under article XII, of the Constitution, county taxes for the support of free public schools therein must be specifically levied

for that purpose, differentiated from a levy for other county purposes.

2.  The eighth section of Article XII, of the Constitution, providing that each county shall be required to assess and collect annually for the support of public free schools therein a tax of not less than three mills nor more than five mills on the dollar of all taxable property in the same, contains a limitation upon the power of the legislature to authorize a levy for such purpose in excess of five mills, and this amount cannot be exceeded in any form or guise of taxation for the support and maintenance of the public schools of a county.

3.  Chapter 4602, laws of 1897, purporting to authorize the county of Duval to issue bonds for the purpose of purchasing school sites, and constructing, repairing and furnishing buildings for the use of the public schools in said county, declared to be in violation of the limitations contained in Article XII, of the Constitution, and therefore void.


Writ of Error to the Circuit Court for Duval County.


*Statement.*


The alternative of mandamus issued on petition of plaintiffs in error is as follows:

"WHEREAS, it is made to appear by the petition filed in this cause, that William A. Bours, James A. Marvin and E. C. Pickett are and constitute the Board of Public Instruction for the county of Duval, State of Florida:

That the legislature of the State of Florida enacted a law which was approved and took effect on the fourth day of June, 1897, which with its title is in the words and figures as follows, to-wit:—

AN ACT to authorize the county of Duval to issue bonds for the purpose of purchasing school sites and

constructing, repairing and furnishing buildings for the use of the public schools of said county.

BE IT ENACTED by the Legislature of the State of Florida:

Section 1.    The Board of County Commissioners of Duval county are hereby authorized and directed to call a special election in said county by the qualified electors to vote at such election for or against the issuing of county bonds for the purpose of raising a fund to purchase school sites and for the construction, repair and furnishing of buildings for the use of the public schools in said county.

Section 2.    Such call shall be published once a week for thirty days in a newspaper published in Duval county.

Section 3.    The qualification of electors, and all matters pertaining to the holding and conducting of such election, counting the ballots and the canvass of the returns thereof, shall be governed by the provisions of the general law for holding general and special elections in this State, as far as the same applies; provided, that the official ballot be prepared by the County Commissioners shall contain the words:

OFFICIAL BALLOT.
Duval      County.
Shall Bonds Issue for Public Schools?

---

For Bonds.

---

Against Bonds.

---

Section 4.    The voter favoring the issue of bonds will indicate his choice at such election by making a

cross mark (X) on the official ballot in the space before the words "For Bonds." The voter opposing the issue of such bonds will indicate his choice by making a cross mark (X) on such ballot in the space before the words "Against Bonds."

Section 5. Upon the completion of the canvass of such election by the Board of County Commissioners, they shall furnish a certified copy of the result of such canvass to the Board of Public Instruction of Duval county.

Section 6. If the majority of electors voting at such election shall vote for bonds, the Board of Public Instruction of Duval county may by resolution direct the issue of county bonds in any amount not exceeding seventy-five thousand dollars, and shall furnish the Board of County Commissioners with a certified copy of such resolution, which shall be entered upon the record of the County Commissioners. It shall thereupon be lawful and it shall be the duty of said Board of County Commissioners to issue bonds of the county of Duval in such amount not exceeding seventy-five thousand dollars, as directed by the said Board of Public Instruction.

Section 7. The Board of County Commissioners shall have the said bonds prepared in denominations of five hundred and one thousand dollars each; the principal to be payable in ten years from date, with interest at no more than six per cent per annum, payable semi-annually in the city of Jacksonville, and at an agency in the city of New York. Such bonds shall have engraved interest coupons attached, payable at the expiration of periods of six months. Such bonds shall be signed by the chairman of the Board of County Commissioners and the clerk of the said Board, and shall be sealed with the seal of said Board of County Commissioners.

Section 8.  When prepared, signed and sealed, the said bonds shall be delivered to the County Treasurer and the same shall be sold by or under the direction of the said Board of Public Instruction, at not less than their face value, the proceeds to be paid into the County Treasury to be held as a fund for the purposes herein provided.  Before the receipt of said bonds or the funds arising therefrom by the said Treasurer, he shall be required to give bond to the Board of Public Instruction for Duval county in such amount as shall be fixed by the Board of County Commissioners, with two or more good and sufficient sureties, or the surety of a guaranty company authorized to do business in this State, conditioned for the faithful discharge of his duties as the custodian of said bonds and the moneys arising therefrom, and all moneys and securities for the payment of the interest and principal of said bonds, and for the faithful disbursement and accounting of the same, and for the delivery to and payment to his successor of all bonds and moneys remaining in his hands from the sources above mentioned, undisbursed at the expiration of his term of office.

Section 9.  The cost of holding the election herein provided for all expenses incident thereto and the cost of the preparation of the bonds, shall be paid by the County Commissioners out of the county funds and the same shall be re-imbursed by the said Board of Public Instruction out of the proceeds arising from the sale of said bonds.

Section 10.  The proceeds of the sale of said bonds in addition to the expenses above provided for shall be used by the said Board of Public Instruction of Duval county exclusively for the purpose of purchasing school sites, and constructing, repairing and furnishing buildings for the use of public schools in Duval county.

State of Florida v. L'Engle—Statement of Case.

Section 11. The Board of County Commissioners shall annually levy a tax of not more than three-quarters of one mill on the dollar on the taxable property of said county to meet the interest on said bonds as they shall come due, and they are authorized to levy an annual tax of not more than one mill on the dollar on said property to provide a sinking fund for the payment of the said principal of said bonds.

Section 12. The County Treasurer by and with the advice of the said Board of Public Instruction from time to time shall apply all moneys which may come into his hands as a sinking fund to the purchase at their market value of said county bonds if they can be had at or below par, or shall otherwise, under the same direction and control, invest money in bonds of the United States, State of Florida, or such other State bonds or bonds of the county of Duval as may seem to said Board most advisable.

Section 13. That this law shall be in force from and after its passage and approval by the Governor.

Approved June 4th, 1897.

That Francis F. L'Engle, Joseph H. Durkee, Edward P. Holmes, David Ogilvie and H. J. Pickett, are and constitute the Board of County Commissioners of Duval county, Florida.

That said Board of County Commissioners have failed and refused to call a special election in said county by the qualified electors to vote at such election for or against the issuing of county bonds for the purpose of raising a fund to purchase school sites and for the construction, repair and furnishing of buildings for the use of the public schools in said county as it was and became their duty to do upon the enactment of said law, notwithstanding they have been requested to do so by the Board of Public Instruction for the county of Duval.

Now, being willing that due and speedy justice may be done in this behalf, this is, therefore, to command you the said Francis F. L'Engle, Joseph H. Durkee, Edwin P. Holmes and David Ogilvie and H. J. Pickett, as the Board of County Commissioners of Duval county, Florida, to call a special election in the said county of Duval by the qualified electors to vote at such election for or against the issuing of county bonds for the purpose of raising a fund to purchase school sites and for the construction, repair and furnishing of buildings for the use of the public schools of said county, or show cause before me on the 7th day of February, A. D. 1898, at 10 o'clock A. M., why you have not done so.

Done and ordered this 28th day of January, A. D. 1898.

                                        R. M. Call,
                                                Judge."

Respondents moved to quash said writ upon the following grounds:

"1st.  There is no law imposing upon them the duty of calling a special election in said county of Duval by the qualified electors to vote at such election for or against the issuing of county bonds for the purpose of raising a fund to purchase school sites, and for construction, repair and furnishing of buildings for the use of the public schools of said county.

2nd.  That Chapter 4602, acts of 1897, is in conflict with section 20 of Article 3 of the constitution and is null and void.

3rd.  That Chapter 4602, acts of 1897, is in conflict with the provisions of Article XII of the constitution of this State and is null and void."

The Circuit Judge made an order granting said motion, as follows:

"This cause coming on to be heard upon the motion

of the respondents to quash the alternative writ of mandamus issued to them in the above stated cause, was argued by counsel for relators and for respondents, and thereupon it is considered by the court that the said motion is well taken and the same is granted, and the said alternative writ of mandamus is quashed."

*Fleming & Fleming* for Plaintiffs in Error.

*George U. Walker and W. B. Young* for Defendants in Error.

MABRY, J.:

The constitutionality of the act of 1897, set out in full in the alternative writ, is brought in question in this case. We will pass without discussion the first objection urged against the validity of this act, that it is in conflict with that provision of section 20, Article III of the constitution, prohibiting the legislature from passing any special or local laws for the assessment and collection of taxes for State and county purposes.

The second attack on the act is that it violates the 12th Article of the constitution. This Article is on the subject of education and the first section ordains that the legislature shall provide for a uniform system of public free schools and shall provide for a liberal maintenance of the same. The second section provides for a Superintendent of Public Instruction whose duties shall be prescribed by law, and the third creates a State Board of Education with specified powers and duties. The fourth and fifth provide for a State School Fund, the interest of which shall be exclusively applied to the support and maintenance of public free schools and the principal shall be held sacred and inviolate. In addition

thereto a tax of one mill on the dollar on all the taxable property of the State is required by the sixth section to be levied and apportioned annually for the support and maintenance of public free schools, and provision is made in the seventh for the distribution of the interest on the State school fund, and the special one-mill tax among the several counties of the State. The seventh section as found in the original instrument of 1885, has been amended, but the change affects only the manner of apportionment of the State fund among the counties. Further provisions are found in the tenth and eleventh sections in reference to dividing the counties into school districts, and authorizing an additional levy of taxes in districts, not to exceed three mills on the taxable property of the district, upon the majority vote of electors paying taxes on real or personal property.

It is apparent that Article XII has devised a complete scheme for the support and maintenance of public free schools in the various counties of the State. A State school fund is first provided for from specified sources, which is to be kept inviolate, and the interest accruing thereon, and a one-mill tax, shall be apportioned among the different counties of the State. Then a county school fund for the support of the public free schools of the county is provided for, and the constituent parts of this fund are specified. In addition to the apportionment from the State funds and the capitation taxes collected within the county, a further county assessment is to be required of not less than three nor more than five mills on the dollar of the taxable property of the county, and all this is constituted a county school fund to be disbursed by the county board of public instruction solely for the maintenance and support of public free schools. To the extent of a direct county levy for public school purposes, section eight is a com-

mand to make such levy, and at the same time it contains a limitation upon the power of the legislature to require or authorize a levy in excess of five mills, except as provided in the tenth section for an additional levy of not more than three mills for district purposes. The fifth section of Article IX provides that the legislature shall authorize the several counties in the State to assess and impose taxes for county purposes, and for no other purposes, and while the support of the public schools of a county may be a county purpose, still it is entirely clear that the constitution has differentiated county taxation for this purpose and applied a limitation thereto. When the constitution expressly enjoins that each county shall be required to levy and collect annually for the support of public free schools, a tax of not less than three nor more than five mills on the dollar of the taxable property of the county, no other proper construction is admissible than that the power to tax for such purpose is limited to the higher rate stated. Cheney and wife v. Jones, 14 Fla. 587; State ex rel. Murphy v. Barnes, 24 Fla. 29, 3 South. Rep. 433. But for the limitations contained in the 12th Article of the constitution, counties might be authorized by proper legislation to levy taxes without limit for public school purposes. We held in Stockton v. Powell, 29 Fla. 1, 10 South. Rep. 688, that the improvement of the navigation of the St. Johns river in Duval county was a county purpose within the provisions of section 5, of Article IX, and that the county could issue bonds in aid thereof. The only limitation in that Article upon the legislature to authorize counties to levy taxes is that they must be for county purposes. In the act now before us the object is to issue bonds for public school purposes and if the constitution has imposed limitations on taxation for such purposes, they must not be disre-

40th. Fla 26.

garded. As stated we have no doubt that the framers of the constitution did intend by section eight of Article XII to prohibit the legislature from imposing any county taxes for the support of public free schools beyond the rate of five mills on the dollar of the taxable property of the county. If this is the meaning of the constitution, the legislature can not in any form or guise of taxation for such purpose exceed the rate limited. It is also apparent that in devising a scheme for the support and maintenance of public free schools in the counties, the constitution has directed that the funds arising from the annual levies of taxes, as required by section eight, shall constitute a part of the public school funds of the counties to be disbursed by the county boards of public instuction solely for the maintenance and support of public free schools. The school fund has been segregated by the constitution from the general county funds and must be specially levied for this distinct purpose. Whatever burdens of county taxation that can be imposed for such purpose must be in aid of and constitute a part of the county school fund, and no authority can be given to divert it from the objects specified in the constitution. What is said has reference entirely to county taxation for the support of the public free schools of a county. The purpose of the act in question, as indicated by its title, is to authorize the county of Duval to issue bonds for the purpose of purchasing school sites, and constructing, repairing and furnishing buildings for the use of the public schools of the county. An election is to be held to vote for or against the issuing of *county bonds*, and when the conditions for their issuance have arisen, the county commissioners are required to issue *bonds of Duval County*. They are to be signed by the chairman and clerk of the board of county commissioners, and sealed with the seal of said board. It is clearly

contemplated that the bonds to be issued are to be the county bonds of Duval county. They are to be issued for a public school purpose, and taxes are required to be levied to meet the interest accruing thereon, and to constitute a sinking fund for their ultimate redemption, but the taxes authorized to be levied are not required to be a part of the school levy, and no purpose is manifested to charge this bonded indebtedness upon the public school fund of the county. Nowhere is it declared that the proceeds of the bonds shall constitute a part of the public school fund of the county to be disbursed as directed by the constitution, but the reverse of this is indicated. This fund is to be held by the county treasurer under a separate bond, and, after paying election expenses is to be used by the county board of public instruction exclusively for the purchase of school sites, and for constructing, repairing and furnishing buildings for the use of the public schools of the county. Briefly stated the scheme of this act is not to provide a bonded school indebtedness to be charged upon the public school fund of the county and to be met by taxation for that purpose, but to create a bonded county indebtedness for public school purposes independent of, and in no way connected with, the system of county school revenues. If the bonds to be issued under this act are valid, no doubt can exist that they would constitute a county indebtedness, the payment of which could be coerced like the payment of any other general county liability. Mutual Benefit Life Ins. Co. v. City of Elizabeth, 42 N. J. L., 235; United States v. Fort Scott, 99 U. S. 152. The constitution clearly contemplates that county taxation for public school purposes shall be specially levied for that purpose, and no doubt can exist that a limitation has been placed upon the amount of this levy. If the scheme devised by the act before us is sanctioned,

how can this limitation be applied? The county obligation once contracted must be discharged by the county taxation for general purposes, and there will be no ground for holding that the taxes for such purpose must come exclusively from the public school revenues. Had the legislature provided for the issuance of county school bonds to be paid exclusively out of county taxes for public school purposes, a different question would be presented, in reference to which we need not express an opinion. But such is not the legal effect or purpose of Chapter 4602, and it can only be construed as providing a general county obligation for public school purposes to be paid out of the general revenues of the county. The county school board at whose disposal all county school funds are placed for disbursement, as directed by the constitution, could not be required under the act to appropriate any part thereof either to the interest or principal of the bonds, and in no other light can the scheme be considered than an assertion of the right to levy general county taxes for public school purposes. It is not competent in our opinion, for the legislature to authorize a county to do this, and the judgment is, therefore, affirmed.