B. J. HAMRICK and D. A. FINLAYSON, Intervenors, v. SPECIAL TAX SCHOOL DISTRICT No. 1 of Jefferson County, and BOARD OF PUBLIC INSTRUCTION, Jefferson County.

178 So. 406.

Opinion Filed January 5, 1938.

Rehearing Denied February 8, 1938.

454

*B. J. Hamrick* and *D. A. Finlayson,* for Appellants;
*S. D. Clarke* and *T. T. Turnbull,* for Appellees.

WHITFIELD, P. J.—This appeal is taken by intervenors from a final decree validating an issue of $48,000.00 4% bonds by the Board of Public Instruction of Jefferson County, Florida, a corporation, "for and on behalf of Special Tax School District Number One of said County." See Sections 5106 (3296) *et seq.,* 700 (560) *et seq.,* 720 (579) *et seq.,* 740 (598) C. G. L.; Lyle v. State, 69 Fla. 97, 67 So. 574; Steen v. Board, 80 Fla. 146, 85 So. 684; Weinberger v. Board, 93 Fla. 470, 112 So. 253; Perry v. Consolidated Spl. Tax School Dist., 89 Fla. 271, 103 So. 639; Leonard v. Franklin, 84 Fla. 402, 93 So. 688.

The petition for validation was filed under the statute against the State of Florida by "The Board of Public Instruction for Jefferson County, Florida, and Special Tax School District Number One of said County."

The State Attorney answered:

"Comes now the State of Florida, by and through O. C. Parker, Jr., as State Attorney for the Second Judicial Circuit of the State of Florida, and for Answer to the Petition in this cause says:

1. "That he has carefully examined the contents of the Petition and has investigated the proceedings set forth therein; that said Petition appears to be sufficient, and the proceedings described therein appear to have been properly, regularly and lawfully conducted, and all matters and things in connection with the issuance of the Bonds described therein appear to have been done in accordance with law.

2. "That the State of Florida can show no cause why

the bonds should not be validated and confirmed, or why the prayer of the Petition should not be granted.

3. "Further answering, the State Attorney believes that the allegations set forth in the petition should be determined as matters of law and fact, and the State of Florida, therefore, neither admits nor denies the several allegations of the Petition, but demands strict proof thereof."

Two citizen taxpayers intervened and moved the Court "that the petition in the above entitled cause be dismissed, because it is sufficient to enable the Court to determine, order and decree the validity of the bonds sought to be validated in that it fails to set out the amount and nature of the existing indebtedness of said Tax School District, and fails further to set out the amount of the assessed value of the taxable property of such district according to the last assessment for State and County purposes."

An amendment to the petition alleges "that at the time of the presentation of said Petition calling said election, and on the date of said election and at the date of the filing of this Petition, that said Special Tax School District Number One had and has no existing outstanding indebtedness; and that the assessed value of the taxable property within said District according to the last assessment thereof for State and County purposes aggregates the sum of $876,448.00."

In answer of the intervenor it is averred:

2. "That the existing indebtedness of the County of Jefferson, of which the Special Tax School District is a component part, is $676,500.00 composed of $657,000.00 in bonds issued for the purpose of building hard surfaced roads in the County, and $19,500.00 duly issued for the purpose of building a Court House in the County.

3. "That the County indebtedness set out in paragraph 2

hereof is an existing debt, pro rata, of each of the Special Tax School Districts composing the County, within the purpose, meaning and intent of the Constitutional limit of the County's power to issue bonds on the taxable property of the Special Tax School Districts for exclusive school purposes within said districts; that the payment of such existing bond indebtedness is a burden on and, under the terms of the contracts constituting said bonds, is to be met by a tax to be levied uniformly on the taxable property of Special Tax School District No. 1, along with that of the other portions of the County; and is a debt of such district in the proportion that the taxable property in such district bears to the taxable property in the entire County.

4. "That the taxable property of the entire County, including delinquencies and homesteads, as shown by the last assessment for State and County purposes, is $1,819,-508.00; and the taxable property in Special Tax School District No. 1, as shown by the same assessment, and so alleged in the amended petition, including delinquencies and homesteads, is $876,448.00 or 48 per cent of the total taxable property of the County, including delinquencies and homesteads; that the proportion of the indebtedness represented by the County Road and Court House Bonds, set out in Paragraphs 2 herein, of the District, is 48 per cent thereof, to-wit: $324,720.00 and more than 37 per cent of the assessed value, when delinquencies and homesteads are included as taxable property, of the taxable property of the district according to the last assessment for State and County purposes; exclusive of the proposed bond issue."

A motion to strike the answer was granted and the validation of the bonds was decreed.

The brief of counsel contains the following:

The three assignments of error are so interrelated that their treatment may be combined; and the questions involved reduced to one:

"With what meaning are the words 'the existing indebtedness of such special tax school district' used in Article XII, Section 17 of the Constitution where it provides 'no bonds shall be issued which shall exceed, together with the existing indebtedness of such special tax school district, 20 per cent of the assessed value of the taxable property of such district according to the last assessment for State and County purposes prior to the issuing of such bonds'?

"It is our contention (1) that the feature as to who discharges the indebtedness, and not for whose benefit it is incurred, is the characteristic that determines whose is the indebtedness; and that the indebtedness is a definite part of a larger indebtedness is of no concern, (2) that 'special tax school district' are words used to signify a *territorial subdivision of the county* and not a corporate entity independent of the county; and that 'existing indebtedness of such special tax school district' are words used to signify *any* indebtedness whose payment, *whether wholly or in part,* is to be met by a special tax to be levied on the taxable property lying within the territory set apart as 'such special tax school district.'"

Article XII of the Florida Constitution contains the following:

"Section 10. The Legislature may provide for the division of any county or counties into convenient school districts; and for the election biennially of three school trustees, who shall hold their office for two years, and who shall have the supervision of all the schools within the district; and for the levying and collection of a district school tax, for the exclusive use of public free schools

within the district, whenever a majority of the qualified electors thereof that pay a tax on real or personal property shall vote in favor of such levy: Provided, that any tax authorized by this section shall not exceed ten mills on the dollar in any one year on the taxable property of the district. (Amended, Senate Joint Resolution 1, Acts 1921; adopted at general election, 1922.)

"Section 11. Any incorporated town or city may constitute a School District. The fund raised by Section Ten may be expended in the district where levied for building or repairing schoolhouses, for the purchase of school libraries and text-books, for salaries of teachers, or for other educational purposes, so that the distribution among all the schools of the district be equitable."

"Sec. 13. No law shall be enacted authorizing the diversion or the lending of any County or District School Funds, * * *."

"Sec. 17. The Legislature may provide for special tax school districts to issue bonds for the exclusive use of public free schools within any such special tax school district, whenever a majority of the qualified electors thereof who are freeholders shall vote in favor of the issuance of such bonds, but no bonds shall be issued hereunder which shall exceed, together with the existing indebtedness of such special tax school district, 20 per cent of the assessed value of the taxable property of such district according to the last assessment for State and County purposes prior to the issuing of such bonds. Any bonds issued hereunder shall become payable within thirty years from the date of issuance in annual installments. which shall commence not more than three years after the date of issue. Each annual installment shall be not less than three per cent of the total amount of the issue. Whenever any such special

tax school district has voted in favor of the issuance of such bonds, a special tax for the payment of the interest on said bonds and the principal thereof as the same shall become due and payable, shall be levied on the taxable property within the district voting for their issuance in accordance with law, providing for the levy of taxes, and such tax shall not be applied to any purpose other than the payment of the principal and interest of said bonds."

County taxation, under Section 8 of Article XII, for the support of public free schools therein, is distinct from county taxation for county purposes under Section 5, Article IX, of the Constitution. See State, *ex rel.* Bours, v. L'Engle, 40 Fla. 392, 24 So. 539.

Any incorporated town or city may constitute a school district, but a town or city as such cannot levy a tax for public free school purposes. Brown v. City of Lakeland, 61 Fla. 508, 54 So. 716; Munroe v. Reeves, 71 Fla. 612, 71 So. 922.

County taxation to pay bonds issued by the county board of public instruction to acquire, build and equip modern high school buildings in stated special tax school districts in the county in aid of the districts, is contrary to provisions of Article XII of the Constitution. Leonard v. Franklin, 84 Fla. 402, 93 So. 688.

Under Sections 10, 11 and 17 of Article XII, "school districts" or "special tax school districts," though they are within the counties of the State, yet they are by the Constitution made separate and distinct governmental entities, whose taxing power is separate and distinct from the county taxing power for public free schools in the counties, under Section 8, Article XII, and from the county taxing power for county purposes, under Section 5 of Article IX. Even if a special tax school district is not by law expressly

made a corporation, it is a distinct governmental entity, and its powers in issuing bonds to be paid by taxation within the district, and in the use of district school funds, are defined by the Constitution in such manner as to establish the separate entity of a special tax school district from the county for the purpose of issuing bonds, and taxation.

Under Section 10 of Article XII, school districts within a county may be provided for; three school trustees are to be selected therein, and a district school tax levied upon "the taxable property of the district" "for the exclusive use of public free schools within the district." Section 17, Article XII, authorizes the Legislature to "provide for special tax school districts to issue bonds for the exclusive use of public free schools within any such special tax school district." The section also provides that "a special tax for the payment of the interest on said bonds and the principal thereof, as the same shall become due and payable, shall be levied on the taxable property within the district voting for their issuance in accordance with law." Sections 10 and 17, Article XII, are grants of power as well as limitations upon the granted powers. Section 13, Article XII, recognizes counties and districts as being different governmental entities having separate school funds. "The trustees of any school district shall be a corporation." Sec. 717, C. G. L.

Sections 10 and 17, Article XII, clearly make a special tax school district a governmental entity with special granted powers that are distinct from the powers conferred upon counties; such powers to be operative only within the territorial limits of the districts respectively.

The provision of Section 17, Article XII, that "no bonds shall be issued hereunder which shall exceed, together with the existing indebtedness of such special tax school district,

20 per cent of the assessed value of the taxable property of such district according to the last assessment for State and county purposes prior to the issuing of such bonds," is by the section confined to bonds issued for a special tax school district to be paid by taxation upon property within the district; and the amount of bonds authorized has relation to district indebtedness and to taxable property in the district.

An indebtedness of the county as an entity is not an indebtedness of a special tax school district as a separate entity within the county, even though the taxable property within the district may be subject to taxation for county indebtedness. The tax levies under Section 17, Article XII, are distinct from levies under Section 8, Article XII, and Section 5 of Article IX.

A special tax school district in a county is not a municipality but it is made an entity by the Constitution for specific governmental purposes, distinct from the county within which the area of the district lies.

The limitations upon the granted power contained in Section 17, Article XII, relate to the special tax school district and to its indebtedness, and to the issue and payment of bonds and the application of funds derived from taxes levied for the payment of the district bonds and the interest thereon. It was therefore the expressed intention to limit the bonded indebtedness of the district by reference to "the existing indebtedness of such special tax school district," etc. It would have been necessary to expressly refer to indebtedness *of the county* if such indebtedness had been intended to limit the issuance of bonds by the special tax school district, an entity separate from, though within the territorial limits of, the county.

Under the quoted definite provisions of the Constitution,

a special tax school district in a county of this State is not "merely a territorial subdivision for the purpose of operating the schools therein differently from other portions of the county," as contended by the intervenors. Such district is not expressly made a corporation, but it is by the Constitution made a separate entity from the county in which it is situated, and has stated "indebtedness-incurring and indebtedness-discharging powers" to be "exercised independently of the county," even though the county board of public instruction or other county officials have prescribed statutory authority in the exercise of the special tax school district powers and functions.

"Special tax school districts" may be authorized "to issue bonds"; and when issued "a special tax for the payment of the interest on said bonds and the principal thereof as the same shall become due and payable, shall be levied on the taxable property within the district." The district alone incurs the bond indebtedness, and the district alone is charged with the obligations and duty to pay the bond indebtedness by taxation of property "within the district." The taxes may be levied, collected and disbursed by county officials, as county taxes may be levied, collected and disbursed; but this does not make the district tax a part of a county tax, or make the district "a mere territorial subdivision of the county school unit."

"The existing indebtedness of the special tax school district" as used in Section 17, Article XII, Constitution, means the outstanding financial obligations of the district as a governmental entity, and not the indebtedness in whole or in the district as a part of the larger entity—the county.

The organic provision that "Whenever any such special tax school district has voted in favor of the issuance of such bonds, a special tax for the payment of the interest on

said bonds and the principal thereof as the same shall become due and payable, shall be levied on the taxable property within the district voting for their issuance in accordance with law, providing for the levy of taxes, and such tax shall not be applied to any purpose other than the payment of the principal and interest of said bonds," clearly makes the commanded tax a district tax for an exclusively district purpose. It is in no sense a county tax, and is wholly independent of the tax levy authorized by Section 5 of Article IX for county purposes, and independent of the annual tax levy by the county authorized by Section 8 of Article XII "for the support of the public free schools therein." See also Section 10, Article XII.

A purpose of Article XII of the Constitution is to authorize special public free school facilities in particular territorially ascertained districts in a county when voted by the freeholder electors of the districts, such special school facilities to be for the exclusive use of the public free schools within the districts, and to be paid for by taxation of property within the districts respectively. The due accomplishment of such designed purpose required provision to be made for the establishment of district governmental entities separate from the county entity, with taxing and administrative powers and functions distinct from county powers and functions (as was done by Sections 10, 11 and 17), though such separate entities called districts are within a county, and though the powers and functions of the districts be supplementary to the school taxing power and other cognate functions of the county, and county officials perform functions for the district under the statutes.

If the applicable statutes are in conflict with the Constitution, the latter controls.

The organic purpose and the language used clearly make

the Special Tax School Districts distinct governmental entities separate and apart from the county entity; and the organic provisions relating to Special Tax School District powers and indebtedness do not refer to, and are not limited by, county powers or county indebtedness, though the districts be within a county and the property within the district be subject to county taxation for county indebtedness.

In this case the Special Tax School District bonds are to be issued for the exclusive use and benefit of public free schools within the district, while the county indebtedness sought to be used as a limitation upon the district bond issue is for county purposes other than public free schools. The Constitution does not expressly provide for *county* bonds for school purposes. See State, *ex rel.,* v. L'Engle, *supra.* Section 17, Article XII, provides for Special Tax School District bonds, not for county bonds for school purposes. See Leonard v. Franklin, *supra.*

Affirmed.

ELLIS, C. J., and TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.