QUESTION:
Under general law, may a board of county commissioners in a noncharter county lend county funds to the district school board, if such funds are derived from county ad valorem taxes or other sources?
SUMMARY:
Noncharter counties are not authorized by general law to lend county funds derived from ad valorem tax revenue or from other sources to district school boards.
The powers of a noncharter county to use county funds are the same regardless of whether the funds are derived from county ad valorem tax revenue or some other source. Consequently, I shall treat your questions as a single question. Until the matter is settled by judicial action, it appears that the question should be answered in the negative.
Noncharter counties have no constitutional powers of their own. Rather, they may exercise only those powers which are conferred on them by general or special law. Section (1)(f), Art. VIII, State Const. See also State ex rel. Volusia County v. Dickinson,269 So.2d 9, 11 (Fla. 1972); Davis v. Gronemeyer, 251 So.2d 1 (Fla. 1971); Weaver v. Heidtman, 245 So.2d 295 (1 D.C.A. Fla., 1971); and the Commentary in 26A F.S.A. 270 (1970). The authority for noncharter counties to lend county funds to a district school board must therefore appear, if at all, in the powers granted to noncharter counties by the Legislature.
Section 125.01(1), F. S., spells out the general powers of noncharter counties. Your inquiry focuses particularly on paragraph (w) of that subsection, which reads:
 The legislative and governing body of a county shall have the power to carry on county government. To the extent not inconsistent with general or special law, this power shall include, but shall not be restricted to, the power to:
 (w) Perform any other acts not inconsistent with law which are in the common interests of the people of the county, and exercise all powers and privileges not specifically prohibited by law.
The meaning of this provision has not been extensively litigated. If construed literally, it would vest plenary powers of self-government in the noncharter counties and would eliminate the necessity for the remaining provisions in s. 125.01(1). This result would negate the spirit and meaning of s. 1(f), Art. VIII, State Const.
There is, however, substantial authority which requires that this provision be narrowly construed. The courts have frequently limited county powers to those which are expressly granted in the statutes, or necessarily implied therein, and have declined to assume that county actions are authorized where the statutory authority is not clear. Crandon v. Hazlett, 26 So.2d 638 (Fla. 1946); Gessner v. Del-Air Corp., 17 So.2d 522 (Fla. 1944); White v. Crandon, 156 So. 303 (Fla. 1934); State ex rel. Burr v. Jacksonville Terminal Co., 71 So. 474 (Fla. 1916); Fla. Ind. Comm'n ex rel. Special Disability Fund v. Nat'l Trucking Co.,107 So.2d 397 (1 D.C.A. Fla., 1951). Also see AGO's 076-173, 076-20, and 075-120. Moreover, the courts have construed provisions like that in s. 125.01(1)(w), F. S., under the principle of ejusdemgeneris, which limits general words or phrases following an enumeration of specific things to things of the same class or genus as those comprehended by the preceding specific terms. See
Arnold v. Shumpert, 217 So.2d 116 (Fla. 1968); Roberts v. American Nat'l Bank, 121 So. 554 (Fla. 1929); Van Pelt v. Hilliard,78 So. 693 (Fla. 1918). Applied to s. 125.01(1)(w), ejusdem generis
requires that only activities in the nature of those described elsewhere in the subsection be deemed authorized. Cf. State v. Orange County, 281 So.2d 310, 314 (Fla. 1973) (Dekle, J., dissenting), stating that the rule of ejusdem generis applied to s. 6(b) of Art. VIII, State Const., so as to eliminate the possibility of other powers being inferred from a general provision as to the continuance of the status of counties of the state.
The only authorities directly construing s. 125.01(1)(w), F. S., suggest that a narrow construction is appropriate. In Janis Development Corp. v. City of Sunrise, 40 Fla. Supp. 41 (17th Jud. Cir., 1973), aff'd, 311 So.2d 371 (4 D.C.A. Fla., 1975), the circuit court construed the provision as not authorizing Broward County to impose a variable `land use fee' on new dwelling units, the amount of the fee depending on the intensity of the development. The provision is not discussed in the opinion of the Fourth District Court of Appeal. In State v. Orange County, supra, Justice Dekle's dissenting opinion suggested that the provision was not `sufficiently definite' to authorize counties to issue capital improvement bonds repayable from racetrack and jai alai revenue without a referendum. A majority of the court validated the bonds under the authority of s. 125.01(1)(c), (r), and (t), F. S. Based on these authorities, I construed the provision in AGO 075-91 not to allow a noncharter county to adopt a rent control ordinance. These authorities are not directly related to the instant question, but they do augur a restrictive construction of the statute.
The remainder of s. 125.01(1), F. S., contains no provision authorizing noncharter counties to lend money to district school boards or to any other governmental unit. Under the 1885 Constitution there developed a large body of case law which specifically forbade the appropriation or transfer of public funds from one governmental unit to another. See, e.g., Okaloosa County Water and Sewer Dist. v. Hilburn, 160 So.2d 43 (Fla. 1964); Prescott v. Board of Public Instruction of Hardee County,32 So.2d 731 (Fla. 1947); Amos v. Matthews, 126 So. 308 (Fla. 1930). The only exception made was that authorized and provided for under s. 15, Art. IX, State Const. 1885, with respect to pari-mutuel pool excise tax revenue, essentially restated in s. 7, Art. VII, State Const. Further, county funds were required to be spent only for `county purposes.' Town of Palm Beach v. City of West Palm Beach,55 So.2d 566 (Fla. 1951); Lynn Haven v. Bay County, 47 So.2d 894
(Fla. 1950). County purposes were held to be separate and distinct from school district purposes. Hamrick v. Special Tax Dist. No. 1,178 So. 406 (Fla. 1938). See also AGO 071-109 and the authorities cited therein. Moreover, the Florida Supreme Court has held on several occasions that it is a violation of an elemental principle in the administration of public funds for one who is charged with the trust of their proper expenditure not to apply those funds to the purposes (here, `county purposes') for which they are raised.See Dickinson v. Stone, 251 So.2d 268, 273 (Fla. 1971); Taylor v. Williams, 196 So. 214, 217 (Fla. 1940); Supreme Forest Woodmen Circle v. Hobe Sound Co., 189 So. 249, 250 (Fla. 1939); Oven v. Ausley, 143 So. 588, 589 (Fla. 1932). This case law supports the proposition that lending money to a district school board is not a proper `county purpose' under the 1968 Constitution for which county funds may be spent.
I have examined other statutory provisions which generally authorize county spending and contracting activity. See s.125.01(1)(p), F. S. (allowing counties to enter into agreements with other governmental agencies for performance of authorized functions); s. 125.01(1)(r), F. S. (allowing counties to borrow and expend money); s. 125.01(3), F. S. (allowing counties to expend funds, enter into contracts, and carry out all implied powers necessary or incident to the enumerated powers); and s.163.01, F. S. (allowing local governmental units to enter interlocal agreements). In none of these provisions does there appear any authority or intent to abrogate the well-established case law rule limiting county expenditures to `county purposes.' On the contrary, the use of county tax revenue for `county purposes' is still required under the terms of s. 125.01(1)(r).
Likewise, I have examined statutory provisions which govern the sources and use of district school board funds. Section 235.34(1), F. S., provides in part:
Expenditures authorized. —
 (1) School boards, boards of county commissioners, municipal boards, and other agencies and boards of the state are authorized to expend funds, separately or collectively, by contract or agreement, for the placement, paving, or maintaining of any road, byway, or sidewalk adjacent to or running through the property of any public school or for the maintenance or improvement of the property of any public school or of any facility on such property. Expenditures may also be made for sanitary improvements and for the installation, operation and maintenance of traffic control and safety devices . . . [land] trees, flowers, shrubbery, and beautifying plants. . . .
This subsection permits county expenditures for the specific purposes enumerated therein, but does not contemplate the transfer or lending of county funds to the school board. Section 236.24(1), F. S., reads:
 The district school fund shall consist of funds derived from the district school tax levy; state appropriations; appropriations by county commissioners; local, state, and federal school food service funds; any and all other sources for school purposes; national forest trust funds and other federal sources. (Emphasis supplied.)
 This subsection was carried forward from the time when counties were responsible for levying taxes to support schools. See s. 8, Art. XII, State Const. 1885; ss. 236.33 and 237.18, F. S. (1965). The subsection does not purport to authorize a county to lend or appropriate county funds to school districts, but only permits the school districts to receive and use such funds where such a loan or appropriation is otherwise legislatively authorized as a county purpose. As stated in Weaver v. Heidtman, supra, a county is a creature of the Legislature, created under s. 1, Art. VIII, State Const., and is subject to the legislative prerogatives in the conduct of its affairs. I therefore find no statutory authority for a noncharter county to lend or appropriate county funds to school districts and conclude that such action is not authorized by general law. See AGO 045-291, Sept. 18, 1945, Biennial Report of the Attorney General, 1945-1946, p. 241, which ruled on the same grounds that Liberty County could not lend surplus county funds in its courthouse building fund to the county board of public instruction.
 In reaching this conclusion, I have kept in mind the constitutional provisions which establish the structure of local government. Section 4, Art. IX, State Const., establishes a system of local school districts completely independent of the county governments established under s. 1, Art. VIII, State Const. These school districts have their own elected governing bodies and own taxing powers; they are charged with the specific responsibility to operate free public schools within their respective boundaries. The constitutional structure may therefore require that counties and school districts be fiscally separate. See AGO's 075-91 and 071-109. Cf. Amos v. Matthews, supra, at 320, in which the court engaged in a similar process of reasoning with respect to state and county powers.
 Moreover, s. 9, Art. VII, State Const., limits county and school district taxing powers to levies for their `respective purposes':
 (a) Counties, school districts, and municipalities shall, and special districts may, be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, for their respective purposes, except ad valorem taxes on intangible personal property and taxes prohibited by this constitution.
 (b) Ad valorem taxes, . . . shall not be levied in excess of the following millages upon the assessed value of real estate and tangible personal property: for all county purposes, ten mills; for all municipal purposes, ten mills; for all school purposes, ten mills. . . . (Emphasis supplied.)
This provision appears to separate county and school district purposes into mutually exclusive categories and to require that the tax revenue of each unit be used only for that unit's specified purposes. These specific limitations on taxing power have been held not to be superseded or replaced by any provisions of Art. VIII, State Const. City of Tampa v. Birdsong Motors, Inc.,261 So.2d 1, 4-6 (Fla. 1972).
If county purposes and school district purposes are mutually exclusive categories, then there may be an implied constitutional prohibition against appropriating or lending county funds to school districts. The Constitution expressly authorizes the transfer of funds between levels or units of government only with respect to the allocation of taxes upon the operation of pari-mutuel pools to the counties and the appropriation of state funds to the counties and school districts, among others, under such conditions as may be provided by general law. Sections 7 and 8, Art. VII, State Const. Under the rule expressio unius estexclusio alterius, the express mention of one thing is the exclusion of other things. See generally Thayer v. State,335 So.2d 815, 817 (Fla. 1976); In re Advisory Opinion of the Governor Civil Rights, 306 So.2d 520 (Fla. 1975); Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433, 434 (Fla. 1973); State exrel. Judicial Qualifications Comm'n v. Rose, 286 So.2d 562, 563
(Fla. 1973); Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla. 1952). Application of this rule to the instant question would require that county funds be used only for authorized county purposes and that any allocations, transfers, or uses of county funds for other purposes be deemed prohibited. See Prescott v. Board of Public Instruction of Hardee County, supra; cf. Amos v. Matthews, supra. The Florida Supreme Court has not, however, squarely addressed this or the other constitutional issues discussed herein.
Your inquiry refers to two previous opinions from this office, AGO's 073-58 and 071-54, which relate to the powers of noncharter counties to grant garbage collection and water and sewer service franchises. These opinions were in part based upon former s. 125.65, F. S. 1969, purporting to delegate broad powers of self-government not inconsistent with general or special law, and on the general powers delegated to the counties pursuant to s.125.01(1)(k), and (3)(a) and (b), F. S., describing the powers of noncharter counties in broad terms. To the extent that general language in those opinions may be deemed to hold that noncharter counties possess constitutional powers of self-government, the same are inconsistent with the requirement in s. 1(f), Art. VIII, State Const., that noncharter counties `shall have such power of self-government as is provided by general or special law,' and with the observation made and case law discussed herein that noncharter county powers are limited to those expressly granted by statute or necessarily implied therefrom. To that extent, the discussion in AGO's 073-58 and 071-54 is superseded by this opinion.
Prepared by: David K. Miller Assistant Attorney General